KAELYN LUNGLHOFER,

                Plaintiff,

v.

QUANTUM COMMUNICATIONS
DEVELOPMENT LIMITED,
STARPOOL TECHNOLOGY LIMITED
d/b/a STARPOOL DATA LIMITED, and
GUANGZHOU YUEDONG
INTERCONNECTION TECHNOLOGY
CO., LTD.

                Defendants.

Case No. 3:26-cv-00200

COMPLAINT

## INTRODUCTION

1. This case is an action against defendants that include Quantum Communications Development Limited ("Quantum Communications" or "Defendant"), a company headquartered in the British Virgin Islands. Quantum Communications and its Chinese affiliates (also named as defendants) own and operate an online social media and messaging application called "Meete."

2. Plaintiff Kaelyn Lunglhofer ("Ms. Lunglhofer" or "Plaintiff") is a 19-year-old Virginia resident and freshman student at the University of Tennessee. At the time of certain of the events that form the basis for Ms. Lunglhofer's claims in this action, she was 18 years old.

3. Ms. Lunglhofer, like hundreds of millions of other Americans, and billions of people worldwide, uses social media to share pictures, videos, and

1

messages, with some content accessible only to those within Ms. Lunglhofer's private online social networks, and other content available publicly to anyone who might visit Ms. Lunglhofer's account or profile pages on popular online applications such as Instagram, TikTok, and Facebook.

4. At least in the United States, Ms. Lunglhofer and all those like her who share publicly-accessible content through their social media accounts do so against the backdrop of an implicit societal bargain. The openness inherent in online social media posting may have pros and cons, but it is broadly understood that even when content is shared publicly, the "public" element does not authorize corporations or commercial interests to take content posted by Americans such as Ms. Lunglhofer, without notice or consent, and convert it to corporate commercial use by implying a false or unauthorized endorsement of commercial products or services.

5. This social bargain is underpinned and enforced by a legal framework that prohibits and punishes such conduct. This framework encompasses federal and state statutory provisions and common law principles that bar improper and unauthorized commercial use of the name, image, likeness, and creative work of private citizens, and allow those victimized by such conduct to seek injunctive and monetary relief.

6. Defendant Quantum Communications and its affiliates, in an attempt to promote their social matchmaking and messaging application called Meete (the "Meete app"), have violated this social bargain and legal framework in an egregious and disturbing manner.

2

7. Defendants stole public social media content from Ms. Lunglhofer's TikTok account, including but not limited to a short video Ms. Lunglhofer posted on the day of her high-school graduation, talking briefly to the camera while wearing an orange outfit.

8. Defendants then took this content and used a 10-second video clip of Ms. Lunghofer speaking to the camera as the background for an online advertisement for Meete, deploying this advertisement on other social media applications with a far broader reach, including but not limited to the messaging/social networking application Snapchat.

9. This portion of the advertisement, featuring Ms. Lunghofer's graduation-day TikTok video in which she was speaking to the camera, has the Meete logo and signup link prominently displayed at the bottom. The advertisement is narrated by a female voice with matching visual text, and says, "Are you looking for a friend with benefits? This app shows you women around you who are looking for some fun. You can video chat with them."

10. This would be bad enough, but it gets worse. As implied in the advertisement's reference to "women around you," Defendants used geotargeting technology. Defendants purposefully directed the advertisement featuring Ms. Lunglhofer's image, likeness, and video content so that it would appear on the social media accounts (including Snapchat) of male users in close physical or geographic proximity to Ms. Lunglhofer, including adult males living in the same residential apartment building at the University of Tennessee.

3

11.     In other words, Defendants stole innocent video content in which a teenager spoke to the camera on the day of her high school graduation, placed this stolen content into an advertisement for Defendants' Meete app, added narration and visual text suggesting that women found on the Meete app were open to thinly-disguised prostitution or illicit sexual liaisons in the form of "friend with benefits" arrangements, and then purposely targeted this advertisement featuring Ms. Lunglhofer toward men living or working in close geographic and physical proximity to her, including men in her same building.

12.     Defendants' advertising strategy is morally reprehensible, flagrantly illegal, and extremely dangerous. Ms. Lunglhofer must now move through her initial college years and her physical environment knowing that her mere geographic or physical proximity to men she encounters is accompanied by increased odds that they have seen or will see her in an online advertisement for Meete, crafted to imply her openness to casual sexual relationships with relative strangers, including those seeking connection through an online application touting its intent to bring together men with women who are supposedly "looking for some fun" and open to "video chats" leading to "friend with benefits" arrangements.

13.     Ms. Lunglhofer brings this action for injunctive relief, and compensatory and punitive damages, with the goal of stopping Defendants' unlawful conduct, obtaining compensation for the substantial harm she has suffered, and preventing other young women like her from being victimized and endangered by Defendants' actions.

## THE PARTIES

14. Plaintiff Kaelyn Lunglhofer is a 19-year old freshman student at the University of Tennessee in Knoxville, Tennessee. During the academic year, she resides in an on-campus co-ed university dormitory building in Knoxville. Her legal residence and primary domicile outside of the academic year is in Warrenton, Virginia.

15. Defendant Quantum Communications is a company registered and headquartered in the British Virgin Islands ("BVI"), with its principal place of business registered through a BVI company that provides registered office and registered agent services for corporations formed in or authorized to do business in the BVI. The registered address for Quantum Communications is Quantum Communications Development Limited, c/o Craigmuir Chambers, P.O. Box 71, Road Town, Tortola VG110. An additional business address associated with Quantum Communications is Room 2609, China Resources Building, 26 Harbour Road, Wanchai, Hong Kong, China.

16. Defendant Quantum Communications acts in conjunction with, and upon information and belief, exercises control over, two Chinese affiliates that share at least partially overlapping ownership with Quantum Communications.

17. The Quantum Communications affiliates are Starpool Technology Limited dba Starpool Data Limited ("Starpool"), and Guangzhou Yuedong Interconnection Technology Co., Ltd. ("GYIT"). China's business registry database lists Starpool's business address as Unit 2107, 21/F, Hong Kong Plaza, 188

5

Connaught Road West, Hong Kong, China. China's business registry database lists GYIT's business address as Room 0079, Area A, 2nd Floor, No. 8, Shengtang Street, Tianhe District, Guangzhou, Guangdong, China 510640.

## SUBJECT MATTER JURISDICTION

18. The Court has subject matter jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. § 1331, because the Lanham Act is a federal statute, and thus Plaintiff's Lanham Act claims arise under the laws of the United States. The Court also has subject matter jurisdiction over Plaintiff's Lanham Act and state law claims pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship as between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000. In addition, the Court has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because these claims arise from the same common nucleus of operative fact as Plaintiff's federal statutory claims, and thus are cognizable as part of the same case or controversy pursuant to this Court's supplemental or ancillary jurisdiction.

## PERSONAL JURISDICTION

19. Defendants, individually and collectively, have taken multiple steps to purposefully avail themselves of the privilege of doing business in the United States and in Tennessee. In relation to the Meete app, Defendant Quantum Communications holds itself out as the developer of the Apple version of the application, and registered and uploaded the Meete app as a product available for downloads via the Apple "App Store." Defendant Starpool holds itself out as the

6

developer of the Android version of the application, and registered and uploaded the Meete app as a product available for downloads via Google's "Google Play Store." Defendant GYIT applied for and registered multiple US trademarks associated with the Meete app, via an application submitted on June 10, 2022, and even since has joined with Quantum Communications and Starpool in using these trademarks in connection with marketing and monetization efforts for the Meete app. These efforts have succeeded in obtaining a substantial number of downloads from users in the state of Tennessee. Defendants are under common control, and act jointly and severally to market and monetize the Meete app to users throughout the United States, including substantial numbers of users in Tennessee.

20. The Court has specific personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of doing business within the state of Tennessee, and has targeted its actions at this forum, including but not limited to the particular unlawful acts that give rise to Plaintiff's claims. Defendants' targeted actions that establish a basis for personal jurisdiction in the state of Tennessee include but are not limited to (a) misappropriating online video content from the public TikTok account page of Plaintiff, a student at the University of Tennessee who frequently displays university and Tennessee-related content in her TikTok postings; (b) using that stolen content to create an online advertisement falsely implying Plaintiff's endorsement of Defendants' Meete app; and (c) using geotargeting technology to ensure that this advertisement would be specifically steered toward Tennessee users of other online social media applications, based upon

7

their immediate physical and geographic proximity to Plaintiff (including but not limited to male residents living on other floors in Plaintiff's University of Tennessee dormitory building, at least one of whom was targeted by Defendant with an online advertisement featuring Plaintiff's misappropriated TikTok video content).

21. In the alternative, and to the extent Defendants contend they are not subject to jurisdiction in any state's courts of general jurisdiction, personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) for Plaintiff's federal claims because those claims arise under federal law, Defendants have sufficient contacts with the United States as a whole, and the exercise of jurisdiction comports with the United States Constitution's due process requirements. Certain of these contacts are set forth above, including each Defendant's purposeful availment of the privilege of doing business within the United States by registering their application with Apple and Google, securing trademarks for the Meete app from the United States Patent and Trademark Office, marketing the Meete app throughout the United States, and securing at minimum hundreds of thousands of downloads of the Meete app, including upon information and belief tens of thousands of downloads from users within the state of Tennessee.

22. As set forth below, additional contacts of Defendants include, but are not limited to, (a) Defendants advertising their Meete app through advertising channels and campaigns with a nationwide reach; (b) Defendants maintaining a user base within the United States that numbers (at minimum) in the hundreds of thousands, and may number in the millions; and (c) Defendants monetizing this user

8

base through the business activities described below, including regularly soliciting and accepting payments from users (primarily men) in the United States users, and periodically making payments within the United States to selected users (primarily women) who choose to engage in electronic communications with other users with whom they are "matched" via the Meete app.

23. Defendants' Tennessee contacts also include sufficient purposeful contacts to establish general personal jurisdiction over Defendants in the state of Tennessee. Defendants make the Meete app available through the Apple "App Store" and Google's "Google Play" platform, and Defendants specifically chose to register and list the Meete app on the versions of the App Store and Google Play that are available to users within the United States, including Tennessee. Defendants' online promotional material indicates that Defendants' Meete app has 17 million users worldwide, and upon information and belief, there are at minimum thousands of individuals within the state of Tennessee who have engaged with Defendants' promotional content and downloaded the Meete app.

24. Defendants' business model includes initiating active communication with Meete app account users (particularly female users) and soliciting these users to enter into financial arrangements in which they will agree (for monetary consideration) to communicate with male account holders through the Meete app's embedded messaging interface. Similarly, Defendants initiate active communication with male account holders, providing them with what are supposedly female "matches" identified through the Meete app, and indicating that these male members

9

can access messages and other communications from female members if they purchase online tokens or credits sold by Defendants.

25.     The monetization strategy described in paragraph 24 likewise depends, to varying degrees, on Defendants' use of geotargeting technology. In other words, Defendants purposefully create "matches" between users in the same geographic area, including users within Tennessee, and then communicate with both sides of the alleged "match" in an effort to monetize the connection, by paying female users in Tennessee to engage in communications through the Meete app's messaging interfaces, while charging male users in Tennessee for the ability to access and respond to such communications.

26.     Defendants' contacts with Tennessee, and its purposeful actions involving and directed toward Tennessee residents, when taken together, comprise Tennessee contacts on the part of Defendants that are continuous, substantial, and pervasive, such that each Defendant can reasonably be haled into court in Tennessee in a manner consistent with notions of fair play and substantial justice.

## FACTUAL BACKGROUND

### *Plaintiff's TikTok Account and Content Creation Activities*

27.     Plaintiff Kaelyn Lunglhofer, like more than 200 million other Americans, uses various social media platforms to create and share photos and video content reflecting or depicting various aspects of her everyday life.

28.     Among the social media accounts maintained by Ms. Lunglhofer are two accounts using the social media application TikTok. TikTok is an application through

10

which users who register for accounts can upload short-form audio-visual content, including content they create, and content obtained from other sources.

29. Ms. Lunglhofer regularly creates and posts her own video content on her TikTok accounts. In some instances, using tools available through TikTok's user interface, she chooses to limit access to particular content to individuals whom she accepts as "followers" on her accounts. But for much of her content, she allows it to be viewable by any other TikTok users who may find or visit her account page.

30. Ms. Lunglhofer has had success in drawing substantial numbers of followers and viewers who enjoy viewing and interacting with the content she posts on her TikTok accounts. Most of her content involves lifestyle material pertaining to topics such as travel, dining, social gatherings, school and sorority events, fashion, makeup and beauty tips, and health and fitness.

31. Ms. Lunglhofer creates and selects the content she shares in part with sponsorship and monetization opportunities in mind. A "follower" on TikTok (and other similar social media platforms) is an individual who has an interest in particular content shared or created by another user (i.e., a TikTok "creator), and as a result, chooses to "follow" that creator's account. By "following" a creator's account, followers gain access to any content that creators may choose to restrict to their own followers, and followers typically receive periodic automated notices when a creator chooses to create and post new content.

32. Ms. Lunglhofer has reciprocal "follower" relationships with other young women who are successful TikTok "influencers," including some who have hundreds

11

of thousands of followers. Ms. Lunglhofer has periodically been invited to create content with some of these influencers, or to participate in "cross-posting" content to each other's accounts. These relationships, coupled with Ms. Lunghofer's efforts in developing content ideas and creating and posting her own content, have helped steadily increase the number of TikTok users who follow or view Ms. Lunglhofer's original TikTok video content.

33. Ms. Lunglhofer's success has in turn resulted in economic benefits and sponsorship opportunities. She has received thousands of dollars in free merchandise from fashion and beauty brands, accompanied by requests or suggestions that she review or highlight the products in her posts. From 2024 to the present, these sponsorship opportunities have grown at a steady pace, and Ms. Lunglhofer is regularly solicited by for-profit companies that want to explore collaborating with her to market their products and services to other young women who may view Ms. Lunglhofer's TikTok content.

34. Ms. Lunglhofer's recent TikTok creation efforts since arriving as a freshman student at the University of Tennessee in August 2025 have frequently featured events and activities tied to her membership in her sorority, Sigma Kappa. Ms. Lunghofer's sorority imposes rules on its members with respect to not only the content they post, but also with respect to their day-to-day conduct in their academic and personal lives. The sorority reserves the right to expel any member whose conduct might be deemed inappropriate or which casts the sorority in a negative or questionable light. Any adverse action by the sorority in relation to Ms. Lunglhofer

would significantly harm her TikTok content creation opportunities and would inflict further economic harm by depriving her of valuable academic and professional networking opportunities.

### *Ms. Lunglhofer's Creation of Her Graduation Day Video*

35. On May 31, 2025, Ms. Lunglhofer's family hosted a party at their home in Warrenton, Virginia to celebrate her high school graduation.

36. Shortly before the party began, Ms. Lunglhofer created a video in her bedroom, with music playing in the background, showing off the orange outfit she was wearing. Ms. Lunglhofer then posted that video to her TikTok account.

37. Access to Ms. Lunglhofer's graduation day video was not restricted to her TikTok followers. Instead, the video was viewable by any TikTok user who visited Ms. Lunglhofer's TikTok account page.

38. Despite the graduation day video being publicly accessible, Ms. Lunglhofer did not give any permission, whether express or implied, for a third party to download the video, and then use it as a part of a commercial or profit-seeking endeavor to market goods or services with which Ms. Lunglhofer had no affiliation, and which she had no desire or intention to promote or endorse.

### *Defendants' Theft and Misuse of the Graduation Day Video*

39. At some point between May 2025 and September 2025, Defendants, through an employee or authorized agent, accessed the graduation day video on Ms. Lunglhofer's TikTok account.

40.     Defendants then chose to use Ms. Lunglhofer's graduation day video in an advertisement for their "Meete" social media/matchmaking application. The details of this unauthorized use, and the disturbing audio and text content of the "Meete" advertisement that Defendants used as an overlay for Ms. Lunglhofer's graduation day video, are set forth in paragraphs 7-11 above, and incorporated herein by reference.

41.     Defendants deployed this advertisement for their Meete application, featuring Ms. Lunglhofer's misappropriated graduation day video content, by causing the advertisement to be run on other popular social media applications, including but not limited to "Snap," the messaging and social platform owned by Snapchat Inc.

42.     Snap has a significantly larger user base than Meete. While Meete claims to have 17 million users worldwide, Snap's active worldwide monthly user base exceeds 900 million users as of late 2025.

43.     Part of Defendants' advertising approach in relation to their Meete social media and matchmaking application involves geotargeting. Geotargeting is an online advertising strategy that involves the use of various technological tools and data sources to identify the geographic location of individual users of various social media applications and websites, and then targets such users with online advertisements that in some way relate to or depend upon the geographic location of the viewer to maximize their effectiveness.

44.     Defendants implicitly acknowledged this geotargeting strategy in the very advertisement that featured Ms. Lunglhofer's misappropriated graduation day

14

video content, claiming that their Meete application will allow users to match with "women around you who are looking for some fun."

45. Defendants' geotargeting of the advertisement featuring unauthorized Ms. Lunglhofer's video content was precise, and dangerous. Defendants were able to identify Ms. Lunglhofer's location as a resident of a multi-story dormitory building on the campus of the University of Tennessee. Defendants then aimed the advertisement at male social media users living on other floors in the same dormitory building. One of these users, while using the social media portion of his Snap account, encountered the Meete advertisement featuring unauthorized use of Ms. Lunglhofer's graduation day TikTok video.

46. This user was able to record the portion of the advertisement that featured Ms. Lunglhofer's stolen video content. Initially he was confused, and checked Ms. Lunglhofer's Tik-Tok account, as the style of the video advertisement was similar to Tik-Tok videos, and he believed by virtue of her appearing in the Meete application advertisement that perhaps she was (in his words) "Tik-Tok famous," and was using her content to participate in a paid advertising campaign for Meete. However, he was curious after reviewing Ms. Lunglhofer's Tik-Tok account in more detail, so he then alerted Ms. Lunglhofer to what he had seen and shared the video with her. Through his conversation with Ms. Lunglhofer, he learned that her video content, image, and likeness had been used in an advertisement for the Meete application.

47. With a social media application such as Meete that has 17 million users, and a sufficient marketing budget to advertise on a platform with the breadth and

popularity of Snap, the reasonable inference is that Defendants advertise at a significant scale.

48. This broad-scale advertising, coupled with Defendants' use of the geotargeting techniques described above, supports the inference that hundreds if not thousands of Snap users, most residing or working within a relatively close geographic proximity to Knoxville, Tennessee, were exposed to an advertisement in which Ms. Lunglhofer's graduation day video, filmed when she was 18 years old, was used without her consent as the video backdrop for an advertisement in which the audio and text content urged viewers to download the Meete app, and stated that male Meete users could find "friends with benefits" in the form of "women around you who are looking for some fun" and are available for "video chat."

**COUNT ONE**
**(Violation of the Lanham Act - 15 U.S.C. § 1125(a)(1)(A))**

49. Paragraphs 1-48 above are incorporated by reference as if fully set forth herein.

50. The Lanham Act states

> Any person who…in connection with any goods or services…uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*See* 15 U.S.C. § 1125(a)(1)(A).

16

51. Defendants' conduct constitutes false association and false endorsement in violation of § 1125(a)(1)(A) of the Lanham Act. Defendants used Ms. Lunglhofer's identity, including her image, voice, and distinctive persona as embodied in her publicly posted TikTok video, in interstate commerce in connection with advertising and promotion of Defendants' Meete app. Defendants incorporated a 10-second clip of Ms. Lunglhofer's graduation-day TikTok video into a commercial advertisement disseminated to consumers in the United States on social media platforms, including Snapchat, with the Meete logo and sign-up link prominently displayed.

52. Ms. Lunglhofer's identity and persona function as a protectable indicium of source, sponsorship, and approval. Plaintiff maintains public social media accounts with a distinct style and audience recognition, and she has cultivated commercial goodwill, including brand and sponsorship opportunities tied to her personal brand and content.

53. Defendants' advertisement was likely to—and did—cause confusion, mistake, or deception among ordinary consumers as to the affiliation, connection, or association of Plaintiff with Defendants, and/or as to Plaintiff's sponsorship or approval of Defendants' goods and services. The ad presented Plaintiff's video within a promotional frame bearing Defendants' branding and a call to action to download Meete, and included narration and text implying romantic or sexual availability of "women around you," thereby conveying to viewers that Plaintiff endorsed, was affiliated with, or approved of Meete.

17

54. The likelihood of confusion is underscored by the Sixth Circuit's *Frisch* factors. Ms. Lunglhofer's persona has strength and distinctiveness among her followers and the broader audience who view her content. The parties' marketing channels overlap, as Defendants placed the ad on the same social media platforms and feeds where Plaintiff's audience consumes her content. Defendants used Plaintiff's exact video and likeness, creating maximal similarity. Social media users exposed to short-form ads exercise a low degree of care, increasing the risk of confusion. Defendants intentionally copied Plaintiff's content to trade on her goodwill and credibility, supporting an inference of intent to cause confusion. On information and belief, consumers exposed to the advertisement believed Plaintiff was endorsing or affiliated with Meete, and the implication of her endorsement was material to the advertisement's effectiveness.

55. Defendants' misrepresentations occurred in domestic commerce. Defendants disseminated the advertisement to U.S. consumers, including targeted delivery to users in and around Knoxville, Tennessee, and used the ad to promote downloads and sales of in-app credits in interstate commerce.

56. Plaintiff did not authorize, license, or consent to any use of her name, image, likeness, or video in Defendants' advertising. No platform terms granted Defendants the right to repurpose Plaintiff's content for paid commercial promotion of Defendants' Meete app product.

57. Plaintiff has suffered injury to her commercial interests in business reputation and goodwill proximately caused by Defendants' false association and

18

endorsement, including harm to her personal brand, diminution of the licensing and endorsement value of her identity, lost or impaired sponsorship opportunities, reputational harm among her audience and community, and unjust enrichment by Defendants' exploitation of her persona without compensation. Plaintiff's injuries fall within the Lanham Act's zone of protected interests and were proximately caused by Defendants' misleading use of her identity in the advertisement.

58. Defendants' conduct was willful and intentional. Defendants deliberately misappropriated Plaintiff's content, branded the ad with Meete's logo and sign-up link, scripted narration implying sexual availability "around you," and geo-targeted the ad to male users in close physical proximity to Plaintiff, including within her dormitory building, to leverage the credibility and appeal of Plaintiff's persona, and to increase the ad's impact and conversion rate.

59. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(a)(1)(A), Plaintiff is entitled to injunctive relief barring further use of her identity; removal of the advertisement and any derivative uses; disgorgement of Defendants' profits attributable to the false endorsement; actual and compensatory damages, including for reputational harm and corrective publication if necessary; trebling or enhancement of profits and/or damages in an exceptional case; and an award of costs and reasonable attorneys' fees as permitted by law.

## COUNT TWO
### (Violation of the Lanham Act - 15 U.S.C. § 1125(a)(1)(B))

60. Paragraphs 1-59 above are incorporated by reference as if fully set forth herein.

19

61. Defendants, in commercial advertising and promotion for their Meete application, made and disseminated false and misleading statements of fact that misrepresented the nature, characteristics, and qualities of Defendants' services, and those statements actually deceived or were likely to deceive a substantial segment of the intended audience in a way that was material to consumers' purchasing and use decisions, in violation of 15 U.S.C. § 1125(a)(1)(B).

62. In particular, Defendants' paid advertisement disseminated on social media platforms including Snap stated and implied, among other things: "Are you looking for a friend with benefits? This app shows you women around you who are looking for some fun. You can video chat with them." The advertisement further conveyed that Meete would connect male users with nearby women who were affirmatively seeking sexual encounters and were immediately available for live video chat, and that Meete's user base and matching functionality would reliably deliver such connections based on geographic proximity. These representations were false or, at minimum, were misleading by necessary implication, and had a tendency to deceive a substantial segment of the intended audience.

63. These statements and implications were false and/or misleading because they materially overstated or mischaracterized: (a) the availability, willingness, and intent of "women around" a given user to engage in "friends with benefits" arrangements; (b) the authenticity and accessibility of such purported "matches" via Meete's services; (c) the capability of Meete's platform to deliver live, local, and consensual video chat interactions of the kind promised; and (d) the nature

20

and qualities of Meete's matching features and geotargeting as a means to obtain sexual partners.

64. Defendants' false and misleading claims were made in commercial advertising and promotion, in interstate commerce, and were widely disseminated to U.S. consumers, including targeted delivery to users in and around Knoxville, Tennessee, via large-scale placements on Snap, and were disseminated sufficiently to the relevant purchasing public. The ad buy and deployment strategy were intended to drive downloads of the Meete app and purchases of in-app credits and tokens, thereby affecting commerce within the meaning of the Lanham Act.

65. The false and misleading statements were material because representations concerning the availability and nature of potential matches, sexual or romantic opportunities, proximity-based discovery, and live video chat capabilities are important to reasonable consumers and likely to influence their decisions to download, subscribe to, or purchase credits on the Meete platform.

66. The advertisement's statements and implications actually deceived or, at minimum, had a tendency to deceive a substantial segment of the intended audience, including the male users at whom Defendants directed the ad campaign. By positioning Plaintiff's image and video content as the visual backdrop for claims about "women around you," the ad also reinforced the deceptive impression that the depicted women—including Ms. Lunglhofer—were representative users available for the sexual and chat interactions promised, thereby amplifying the misleading message.

67. Plaintiff has suffered injury to her commercial interests in business reputation and goodwill proximately caused by Defendants' false and misleading advertising, including harm to her personal brand and endorsement value, lost or impaired sponsorship and collaboration opportunities, and unjust enrichment by Defendants' diversion and exploitation of her commercial persona to sell its services. Plaintiff's injuries fall within the Lanham Act's zone of interests and were proximately caused by Defendants' deceptive statements and advertising tactics.

68. Defendants' conduct was willful and intentional. Defendants crafted and disseminated the advertisement to U.S. consumers, integrated geotargeting based on the physical locations of intended recipients, and paired those tactics with express promises of local, sexualized interactions and live video chat, all to increase conversions and revenue, despite lacking a factual basis for the advertised representations.

69. As a direct and proximate result of Defendants' violations of 15 U.S.C. § 1125(a)(1)(B), Plaintiff is entitled to injunctive relief barring further dissemination of the false and misleading advertisements; removal of the advertisement and any derivative uses; disgorgement of Defendants' profits attributable to the false advertising; actual and compensatory damages, including corrective advertising if necessary; trebling or enhancement of profits and/or damages in an exceptional case; and an award of costs and reasonable attorneys' fees as permitted by law.

## COUNT THREE

### (Violation of the ELVIS Act - Tenn. Code Ann. § 47-25-1101 *et seq.*)

70. Paragraphs 1-69 are incorporated by reference as if fully set forth herein.

71. Tennessee's right of publicity statute, known as the "ELVIS Act," Tenn. Code Ann. § 47-25-1101 *et seq.*, recognizes that individuals possess a cognizable property right in their name, image, voice, and likeness.

72. Tenn. Code Ann. § 47-25-1105(a)(1) prohibits knowingly using an individual's name, image, voice, or likeness in advertising without the individual's consent.

73. Under Tenn. Code Ann. § 47-25-1106(a)-(c), an individual whose name, image, voice, or likeness is used in advertising without their consent in violation of § 47-25-1105(a)(1) is entitled to an injunction prohibiting any such continued or future use, and requiring impoundment or destruction of any assets, materials, or data used in creating the unlawful advertisement.

74. Under Tenn. Code Ann. § 47-25-1106(d)(1), an individual plaintiff whose name, image, voice, or likeness is used in advertising without their consent in violation of 47-25-1105(a)(1) is entitled to recover damages, including but not limited to actual damages such as corrective costs and lost licensing revenue due to actual or potential reputational harm, and disgorgement by the defendant of any profit or revenues associated with or attributable to the advertising campaign that featured the unlawful use of the plaintiff's name, image, voice, or likeness.

23

75. Plaintiff Ms. Lunglhofer possesses cognizable property rights in her name, image, voice, and likeness. Her use and enjoyment of these property rights is reflected in her creation and sharing of audio-visual content in connection with her social media accounts, including the TikTok account used to create the May 2025 graduation day video described herein.

76. Defendants, in violation of Tenn. Ann. Code § 47-25-1105(a)(1), knowingly and without Plaintiff's consent misappropriated her TikTok graduation day video content, which featured her protected image and likeness. Defendants then used this stolen content, prominently featuring Plaintiff's image and likeness, in an advertising campaign for Defendants' "Meete app" product/service, thereby exploiting for commercial purposes Plaintiff's image and likeness in a manner that suggested Plaintiff's endorsement of or affiliation with a social media and messaging application through which male users could find "friends with benefits" "looking for some fun" who were willing to participate in "video chat[s]" with users of the Meete app.

77. Defendants also used their geotargeting technology and techniques in connection with this advertisement, deliberately targeting the unlawful advertisement to users of other popular social media and messaging applications, including but not limited to Snap, and selecting the individuals targeted in part based upon their geographic proximity to Defendants. This resulted in at least one male individual living within the same on-campus apartment building as Plaintiff being targeted by Defendants' unlawful advertisement featuring Plaintiff's image and likeness.

78. Defendants' geotargeting strategy in connection with its unlawful advertisement increases the risk of reputational damage and physical danger to Plaintiff. Specifically, Defendants' geotargeting makes it more likely that men with whom Plaintiff comes into contact may recognize her from Defendants' illegal advertisement, and target her for unwanted or unlawful solicitation consistent with Defendants' suggestion that (a) Plaintiff is affiliated with or endorses the Meete app; and (b) women using or affiliated with the Meete app are "looking for some fun" in the form of "friends with benefits" arrangements.

79. The reputational damage and risk of physical harm to Plaintiff arising from Defendants' violation of Tenn. Ann. Code § 47-25-1105(a)(1) constitutes a form of irreparable harm for which there is no adequate remedy at law. Plaintiff is entitled to statutory injunctive relief pursuant to Tenn. Ann. Code § 47-25-1105(c), including but not limited to a prohibition on further unauthorized use of Plaintiff's image or likeness, affirmative actions by Defendants to halt or terminate any prior advertising placements or ad buys for the campaign in which Defendants featured the unlawful advertising described herein, and impoundment or destruction of any materials, data, files, software, or equipment used by Defendants in connection with the unlawful misappropriation and advertising activities alleged herein.

80. Plaintiff has also suffered substantial actual damages as a result of Defendants' violation of Tenn. Ann. Code § 47-25-1105(a)(1), including but not limited to reputational harm, lost licensing and sponsorship opportunities, and lost revenue, commensurate with the reach of Defendants' unlawful advertising campaign

25

featuring the unauthorized use of Plaintiff's image and likeness to promote Defendants' Meete social media/messaging app. Plaintiff's actual damages also include corrective costs incurred in investigating the scope and extent of Defendants' unlawful advertising and the resulting reputational harm and potential danger to Plaintiff's physical safety, including expenses associated with hiring a qualified investigator and securing legal counsel to assist Plaintiff in ascertaining and mitigating the fallout of Defendants' unlawful conduct.

81.     Plaintiff is entitled pursuant to Tenn. Ann. Code § 47-25-1106(d)(1) to recover her actual and compensatory damages as outlined above. Defendants also obtained revenues traceable in whole or in part to the advertising campaign that featured the unlawful and unauthorized use of Plaintiff's image and likeness in Defendants' Meete ads. All such revenues are subject to disgorgement by Defendants pursuant to Tenn. Ann. Code § 47-25-1106(d)(1) and are recoverable by Plaintiff as additional compensatory damages in this action.

## COUNT FOUR
### (Tennessee Common Law Right of Publicity)

82.     Paragraphs 1-81 are incorporated by reference as if fully set forth herein.

83.     Tennessee common law recognizes a protectable property and privacy interest in an individual's name, photograph, image, voice, likeness, and distinctive persona. Defendants misappropriated Plaintiff's identity and exploited it for their own commercial advantage without Plaintiff's consent, thereby violating Tennessee's common law right of publicity.

26

84. As alleged above, Defendants took a 10-second clip of Plaintiff's graduation-day TikTok video, featuring Plaintiff's image, voice, and distinctive persona, and incorporated it into a paid commercial advertisement for Defendants' Meete app. Defendants added the Meete logo, branding, and sign-up call-to-action, paired the video with narration and on-screen text promising that male users could find "women around you who are looking for some fun" and "video chat with them," and disseminated the ad to consumers on social media platforms including Snap.

85. Defendants knowingly used Plaintiff's identity in commercial advertising and promotion to draw attention, increase credibility and appeal, and drive downloads, engagement, and purchases of in-app credits, all for Defendants' pecuniary benefit. Plaintiff did not authorize, license, or consent to any use of her name, image, voice, likeness, or video in Defendants' advertising, and no platform terms or policies granted Defendants the right to repurpose Plaintiff's content for paid commercial promotion.

86. Defendants further amplified the commercial exploitation by employing geotargeting to deliver the advertisement to male users in close physical proximity to Plaintiff in Knoxville, Tennessee, including adult males living in the same university residential building. This deliberate targeting increased the likelihood that men in Plaintiff's immediate environment would associate her with Defendants' sexualized advertising message, exacerbating reputational harm, safety risks, and the wrongful commercial exploitation of her identity.

27

87. Defendants' conduct was intentional, willful, and in reckless disregard of Plaintiff's rights. Defendants misappropriated and repackaged Plaintiff's video content expressly to trade on Plaintiff's identity, goodwill, and audience recognition, and to capitalize on the perceived authenticity of her image and persona for Defendants' commercial advantage. Defendants' misappropriation is not exempted or protected by any First Amendment or statutory "fair use" principle because the challenged use was paid commercial solicitation and product promotion, not news, commentary, scholarship, satire, or an incidental, fleeting inclusion.

88. As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered substantial damages, including injury to reputation and goodwill; diminution of the licensing and endorsement value of her name, image, voice, and likeness; lost or impaired sponsorship, collaboration, and monetization opportunities; emotional distress and humiliation; and other actual damages to be proven at trial. Defendants have been unjustly enriched by their exploitation of Plaintiff's identity and should disgorge all revenues and profits attributable to the unlawful use.

89. Plaintiff is entitled to all available remedies under Tennessee common law, including compensatory damages; disgorgement of profits attributable to the misappropriation; injunctive relief prohibiting further use and requiring removal of the advertisement and any derivative materials; and punitive damages under Tennessee law based on Defendants' intentional, malicious, or reckless misconduct. These remedies are cumulative of, and in addition to, the statutory relief sought

28

under the ELVIS Act and do not conflict with or depend upon Plaintiff's federal claims.

**COUNT FIVE**
**(Tennessee Common Law Defamation)**

90. Paragraphs 1-89 are incorporated by reference as if fully set forth herein.

91. Defendants published statements and actionable implications "of and concerning" Plaintiff that were false, defamatory, and injurious to her reputation. In a paid commercial advertisement for the Meete app, Defendants combined Plaintiff's image and video from her graduation-day TikTok clip with narration and on-screen text stating, in substance, "Are you looking for a friend with benefits? This app shows you women around you who are looking for some fun. You can video chat with them," while displaying the Meete logo and sign-up link. In context, the advertisement conveyed to ordinary viewers the false and defamatory gist that Plaintiff is a participant in, or is available for, "friends with benefits" arrangements or prostitution-like sexual activity, and/or that she solicits or is open to sexual encounters with men in her immediate vicinity through the Meete platform.

92. Defendants intentionally disseminated the advertisement to third parties at scale, including through targeted placements on Snap directed to male users in Knoxville, Tennessee, and specifically to adult males living on other floors in Plaintiff's University of Tennessee dormitory building. At least one such recipient viewed and recorded the advertisement and alerted Plaintiff, confirming publication

29

to third parties. Upon information and belief, many additional Tennessee users were exposed to the advertisement as part of Defendants' campaign.

93. The statements and implications described above were false. Plaintiff does not use the Meete app, did not endorse Meete, and did not authorize any affiliation with Meete's marketing. She is not "looking for some fun" as that phrase was used in the ad, is not available for "friends with benefits" arrangements through Meete or otherwise, and does not solicit sexual encounters with men "around" her via any application. The advertisement's juxtaposition of Plaintiff's video with sexualized narration and text falsely attributed to Plaintiff's promiscuous and unsafe sexual availability and/or participation in prostitution-like conduct.

94. Defendants acted at least negligently in publishing the false statements and implications about Plaintiff. Defendants knew they had no consent or basis to represent Plaintiff as endorsing Meete or as an exemplar of "women around you" seeking sexual encounters, yet they edited and packaged her video into the advertisement and disseminated the ad widely, including to men in Plaintiff's immediate physical environment. In the alternative, Defendants acted with actual malice and/or reckless disregard for the truth by deliberately implying Plaintiff's sexual availability and endorsement despite (a) knowing she had never agreed to promote Meete, (b) knowing the ad's wording and targeting would cause viewers to perceive Plaintiff as one of the "women around you" seeking sexual "fun," and (c) using precise geotargeting to heighten the defamatory impact among those most likely to identify Plaintiff personally, including through in-person contact.

30

95. As a direct and proximate result of Defendants' defamation, Plaintiff has suffered actual injury, including harm to reputation in her university and community, humiliation, mental anguish and emotional distress, loss or impairment of sponsorships, collaborations, and monetization opportunities tied to her social media presence, and other special damages to be proven at trial. Tennessee no longer recognizes presumed damages; Plaintiff pleads and will prove actual injury resulting from Defendants' defamatory publication.

96. Defendants' conduct was intentional, malicious, and/or reckless, warranting an award of punitive damages under Tennessee law. Defendants exploited Plaintiff's identity in a sexualized advertisement and deliberately delivered the message to men in Plaintiff's immediate physical proximity to maximize attention and perceived plausibility, all without any effort to verify truth or obtain consent.

## PRAYER FOR RELIEF

Wherefore Plaintiff Kaelyn Lunglhofer respectfully requests that the Court enter judgment in her favor, jointly and severally, against Defendants Quantum Communications, Starpool, and GYIT, granting her legal and equitable relief as the Court may deem just, including but not limited to:

A. Actual and compensatory damages in an amount to be proven at trial, but not less than $750,000;

B. Disgorgement to Plaintiff of all revenues that are traceable in whole or in part to Defendants' unlawful advertising activity as alleged herein;

C. An accounting of all revenue of any kind received by Plaintiff through users of the Meete application, beginning on the date of Defendants' first unauthorized use of Plaintiff's misappropriated image and likeness in

31

an advertisement for the Meete application, and continuing through the date of the judgment in this case;

D.      Pre-judgment and post-judgment interest to the full extent authorized by law;

E.      Punitive damages in an amount to be determined at trial;

F.      An award of Plaintiff's reasonable costs, expenses, and attorney fees incurred in connection with this matter; and

G.      Any additional relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 28, 2026                    Respectfully submitted,

**MCGUIREWOODS LLP**


/s/ *Nicholas A. DuPuis*
Nicholas A. DuPuis (TN BPR No. 031105)
1075 Peachtree Street, NE, 35th Floor
Atlanta, GA 30309
T: (404) 443-5711
ndupuis@mcguirewoods.com

Abram J. Pafford
*Application for Permanent Admission Pending*
888 16th Street NW, Suite 500
Washington, D.C. 20006
T: (202) 857-1725
apafford@mcguirewoods.com

Lucy J. Wheatley
*Application for Permanent Admission Pending*
Gateway Plaza
800 East Canal Street

32

Richmond, VA 23219
T: (804) 775-4320
lwheatley@mcguirewoods.com

Joanna E. ("Joie") Johnston (TN BPR No. 039537)
*Application for Permanent Admission Pending*
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
T: (704) 343-2220
jjohnston@mcguirewoods.com

*Counsel for Plaintiff Kaelyn Lunglhofer*

33